IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

BARBARA DILLON )
    Plaintiff, )
)
v. ) Civil Action No. TMD 08-2597TMD
)
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Barbara Dillon ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.§§ 1381-1383(c). Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 14) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 21). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is Granted.

I. Procedural History

Plaintiff filed her application for SSI on August 27, 2001 alleging disability since July 1, 2001. R. at 84. Her claim was denied initially and on reconsideration. R. at 30-36. On April 10, 2003, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a

vocational expert ("VE") testified. R. at 285-308. Plaintiff was represented by counsel. In a decision dated July 14, 2003, the ALJ denied Plaintiff's request for benefits. R. at 13-27. The Appeals Council denied review on April 9, 2004. R. at 5-7. Plaintiff subsequently filed a civil action in the district court which remanded the case on April 11, 2005. R. at 351. Pursuant to that Order, the Appeals Council remanded the case, R. at 352-55, and on August 1, 2006, a supplemental hearing was held. R. at 406-33. On May 12, 2007, the ALJ again denied Plaintiff's claim. R. at 334-46. On August 14, 2008, the Appeals Council denied review making the ALJ's May 12, 2007 decision final and this action ripe for review. R. at 309-12.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for SSI using the sequential process set forth in 20 C.F.R. § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: cervical neuropathy, Hepatitis A, B and C, and dysthmic disorder. At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff was not capable of performing her past relevant work. At step five, the ALJ concluded that given her residual functional capacity ("RFC"), there were jobs that exist in significant numbers in the national economy that Claimant could perform. Accordingly, he concluded that Claimant was not disabled within the meaning of the Social Security Act. R. at 334-46.

### III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

### IV. Discussion

Plaintiff contends that (1) the ALJ failed to properly develop the record; (2) the ALJ erroneously assessed the Plaintiff's RFC; and (3) the ALJ erroneously relied upon the testimony of the VE. For the reasons discussed below, the Court finds Plaintiff's arguments to be without merit.

    A.    New and Material Evidence

Plaintiff argues that the case should be remanded based on the failure of the ALJ to

recontact Plaintiff's treating physician, Dr. Frederick Johnson, and nurse practitioner Debra Apperson. Plaintiff directs the Court's attention to statements and opinions of these practitioners that Claimant was disabled and could not work. R. at 181-82, 231-34, 235-36, 237-46.[1] An ALJ is required to recontact medical sources only when the evidence received is *inadequate* to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). Here, Claimant suggests that the ALJ should have recontacted the medical professionals because (1) their opinions conflicted with the ALJ's RFC; and (2) because the ALJ indicated there was no objective medical support for the opinions. Neither reason provides a basis which would require the ALJ to recontact either Dr. Johnson or Nurse Apperson.

In his decision, the ALJ thoroughly addressed the opinions of Dr. Johnson and Nurse Apperson. Both medical sources indicated Claimant was unable to work due to cervical neuropathy, pain and/or depression. *See, e.g.*, R. at 181-82, 231-40. However, the ALJ found that their opinions were not supported by objective medical evidence and were inconsistent with the record as a whole. R. at 343. The ALJ reviewed Dr. Johnson's Medical Report dated November 18, 1999 which included Dr. Johnson's conclusion that Claimant was unable to work. R. at 235-36. Although Dr. Johnson indicated that Claimant had a 3 centimeter leg length discrepancy secondary to a femoral fracture, manic depression, born with a dislocated hip, back pain on her right side going to her left leg and ligamentous derangement in the lumbar spine at the facet joints of L4-5, the ALJ found that there were no specific objective findings to

---

[1] At the outset, the Court notes that the issue of whether a Claimant is disabled or unable to work is reserved to the Commissioner. 20 C.F.R. §404.127(e)(1),(3).

support his opinion that Claimant was permanently unable to work and it was inconsistent with the record as a whole. R. at 235, 36, 337, 343. In fact, in the accompanying report, Dr. Johnson did not indicate any specific mental findings, x-ray results, laboratory results, or other test results to support his opinion. R. at 236. Nor did Johnson indicate any information regarding Claimant's past treatment, response to such treatment or any projected treatment plan. *Id*. In addition, although Dr. Johnson's opinion is dated November 18, 1999, Claimant did not even assert that her conditions first bothered her until June 28, 2001, the date she asserts she became disabled. R. at 98. Moreover, she continued to work approximately 20 hours per week in 2000 and possibly in 2001. R. at 106, 336.

The ALJ did not err by rejecting Dr. Johnson's opinion as it lacked well supported medically acceptable clinical and laboratory diagnostic techniques. *See* SSR 96-2p. Similarly, the ALJ properly afforded the opinions of Nurse Apperson little weight. At the outset, he noted Nurse Apperson was not an acceptable medical source. R. at 343; *see* 20 C.F.R. §404.1513(d); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).[2] Moreover, as with Dr. Johnson's opinion, Nurse Apperson's opinion that Claimant was unable to work was also inconsistent with other substantial evidence in the record.

The ALJ also gave greater weight to the opinions of other medical professionals. For example, with respect to her mental issues, the ALJ gave greater weight to the opinion of consultative psychiatrist, Dr. Fernbach. R. at 343. Dr. Fernbach performed a mental

---

[2]Despite Plaintiff's argument in this section as well as in the section of her memorandum regarding the ALJ's RFC findings, the ALJ did not dismiss Nurse Apperson's opinions simply because she was not an acceptable medical

5

examination on March 28, 2002 at which he noted Claimant was fully oriented with clear sensorium. R. at 205. She was described as friendly, responsive and cooperative. *Id*. He noted her attention and concentration were "fine." *Id*. at 206. Her immediate memory, recent and remote memory were also described as "fine." *Id*. Although her mood was described as "mildly depressive", Dr. Fernbach noted her affect was full range and appropriate, no psychomotor retardation or pressure of speech, good receptive sense of humor, no evidence of thought disorders, no evidence of psychoses, "fine" insight and judgment, no suicidal or homicidal ideation, reality oriented, no evidence of malingering and average intelligence. *Id.* Dr. Fernbach also indicated no signs or symptoms of a significant mental or memory impairment. *Id.* R. at 204-07.

Among the evidence found significant with respect to Claimant's physical impairments, the ALJ noted the results of MRI's performed in November, 2002, R. at 337[3] as well as the findings of a consultative neurological examination performed by Dr. Falik on March 4, 2003. R. at 338. Among the findings on physical examination were that Claimant was alert and in no acute distress, full range of neck motion, full range of back motion, able to stand easily, normal gait. His impression was mild degenerative cervical osteoarthritis without medical or radiographic evidence of radiculopathy and a clinical picture that was consistent with a collagen vascular disease. He opined no further neurological evaluation or intervention was necessary. R. at 260-61. A subsequent rheumatological examination by Dr. Chandra reported on April 2,

---

source. Rather, he considered this factor and, as discussed below, further found that her opinion was inconsistent with objective medical evidence in the record.

2003 reflected an impression of a history of traumatic cervical and lumbar disc disease, possibility of right cervical radiculopathy, suspected fibromyalgia and history of depression. R. at 338-39.

There was sufficient evidence in the record to determine disability. The ALJ was not under a duty to recontact either Dr. Johnson or Nurse Apperson simply because they opined Claimant was unable to work.

B.  RFC

Plaintiff alleges that the ALJ failed to set forth a narrative discussion citing medical facts to support his RFC assessment. RFC is the most work an individual can do, despite her limitations, for 8 hours a day, 5 days a week. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. The ALJ must make the RFC determination at step four of the sequential evaluation process after considering all of the relevant medical and non-medical evidence. 20 C.F.R. § 416.920(e). The regulations provide the following guidelines for how an ALJ should determine a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

---

[3] For example, an MRI of Claimant's thoracic spine revealed no evidence of disc protrusion or bulge of the thoracic spine. R. at 264.

20 C.F.R. § 404.1545(b). The RFC determination must include a function-by-function assessment based upon the claimant's functional limitations and ability to do work-related activities, and must be based on all of the relevant evidence in the record. SSR 96-8p at *3. The ALJ must address both the exertional and nonexertional capacities of the individual. SSR 96-8p at *5-6. The evaluation must also include a narrative discussion describing how medical facts and non-medical evidence support the ALJ's conclusion. *Fleming v. Barnhart,* 284 F.Supp.2d 256, 271 (D.Md.2003); SSR 96-8p at *7.

In assessing Claimant's RFC, the ALJ discussed in narrative form the medical evaluations and reports of various doctors including Drs. Johnson (Claimant's treating physician), Smith (radiologist), Fernbach (neurologist), Chandra (rheumatologist), and state agency medical consultants, as well as Claimant's work history, treatments, hearing testimony, and reports of her ability to perform activities of daily living. R. at 337-43. The ALJ also assessed Claimant's credibility prior to determining her RFC. R. at 341-43. The ALJ's discussion fully and logically explains the evidence and how it supports the ALJ's determination that Claimant can perform light work. The ALJ's function-by-function assessment and narrative discussion were proper, and the determination of Claimant's RFC is supported by sufficient evidence.

With respect to Plaintiff's argument that the ALJ ignored certain findings made by Dr. Fernbach, that argument is also without merit. She asserts that the ALJ failed to include certain mental limitations reported by Dr. Fernbach in his RFC. Specifically, she asserts that the ALJ did not include any limitations with respect to Dr. Fernbach's findings that Claimant

8

experienced reduced capacities for adaptation and social interaction, quality and sustainability of activities, and tolerating and adapting to work-related stresses and demands. R. at 207. The ALJ indicated that he afforded significant weight to the opinion of Dr. Fernbach as his "opinion is support[ed] by findings on mental status examination." R. at 343. While the ALJ does not specifically include the precise limitations mentioned above, he limited Claimant to performing simple, routine, unskilled tasks. R. at 341. Moreover, Dr. Fernbach's discussion of his findings at the mental status examination sheds light on precisely what he means by "some" reduction in these areas. For example, although he indicated "some reduction" in the areas mentioned above, he indicated she was friendly, cooperative and responsive. R. at 205. She was not guarded or evasive. R. at 205. Although her mood was described as "mildly depressive", her affect was full range and appropriate and she had a good receptive sense of humor. *Id*. at 206. Dr. Fernbach also reported that she functions with a reasonable degree of independence. *Id.* at 207. In addition, the ALJ noted Dr. Fernbach's notation that despite the fact that she reported she has no girlfriends because she does not trust anyone, she also indicated that she occasionally dates, talks with friends or relatives on the phone several times per week. R, at 110, 205, 343. The ALJ also noted that in response to how she gets along with others, she reported "fine." R. at 110, 343. Furthermore, the ALJ observed that Claimant interacted appropriately at the hearing. R. at 343.

Plaintiff also argues that the ALJ failed to properly address the extent of Plaintiff's cervical radiculopathy and specifically, that he failed to include any limitation with respect to her ability to feel, handle or grip objects with her *left* hand. Pl.'s Mot. Summ. at 11. However,

the evidence Plaintiff cites does not support any limitations further than that found by the ALJ in the RFC. The ALJ limited Plaintiff to lifting 20 pounds occasionally and 10 pounds frequently with her left non-dominant upper extremity. R. at 341. Although she at first reported that she could not lift anything, she later indicated she could not lift anything heavy with her left hand. R. at 421. The Court has reviewed the ALJ's findings with respect to Claimant's credibility and finds that his conclusion that Claimant was not entirely credible supported by substantial evidence.

    C.    VE Hypothetical

Finally, Plaintiff argues that the ALJ improperly relied on the responses to the hypothetical to the VE because it failed to include the limitations he urges above. For the same reasons discussed above, the Court finds the ALJ did not err. The ALJ must only include those limitations which the ALJ deems credible. *See English v. Shalala,* 10 F.3d 1080, 1085 (4th Cir.1993).

Plaintiff also argues that she is not capable of performing the jobs identified by the VE because they required a reasoning level of 2 which she asserts is inconsistent with the ALJ's limitation that she can perform only simple routine tasks. R. at 341. The Court finds no inconsistency in the present matter. As stated recently in *Pippen v. Astrue*, 2010 WL 3656002, No. 1:09cv308 (W.D.N.C. Aug. 24, 2010)

> Plaintiff's argument is flawed as a matter of law because work requiring a reasoning level two are not inconsistent with a limitation to simple work. Reasoning level two jobs require an individual to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "deal with problems

involving a few concrete variables in or from standardized situations," which is consistent with a limitation to simple work. *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir.2005). Although reasoning level two requires the understanding to carry out detailed instructions, "it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning." *Flaherty v. Halter,* 182 F.Supp.2d 824, 850 (D.Minn.2001). As explained in *Temple v. Callahan,1997* WL 289457, at *2 (9th Cir. May 29, 1997), "work that requires 'commonsense understanding' is simple. Work that requires 'uninvolved written or oral instructions' is simple and routine." As the performance of jobs with a reasoning level of two is not inconsistent with a limitation to simple, routine, repetitive tasks, plaintiff's argument is without merit as a matter of law.

*See also Burnette v. Astrue,* No 2:08-CV-9-FL, 2009 WL 863372, at *5 (E.D.N.C. Mar.24, 2009) (holding that a limitation to simple, repetitive, routine tasks is consistent with a DOT reasoning level of two); *see generally Charles v. Astrue,* No. 07-1172, 2008 U.S. Dist. LEXIS 68597, at *12, 2008 WL 4003651, at *4 (W.D.La. Aug. 7, 2008) (collecting cases holding reasoning level 2 is consistent with an RFC to perform simple, routine tasks).

V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.


Date: January 31, 2011      _____/s/_____
                            THOMAS M. DIGIROLAMO
                            United States Magistrate Judge

Copies to:
Stephen Shea, Esq.
801 Roeder Rd., Suite 550
Silver Spring, MD 20910

Allen F. Loucks
Assistant United States Attorney

11

United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692